At a Court of Oyer and Terminer held at this term, John J. Bowen was indicted and tried for the murder of John W. Dulin, of the first degree. It appeared from the evidence on behalf of the State, that on the night of the 13th of August preceding, a brother-in-law of the prisoner had quarreled with the deceased and challenged him to fight, and while the latter was endeavoring to avoid it, and just as the prisoner joined them, said it was an old grudge of eight months' standing, when the prisoner said to the deceased if it was so, he would take it up, and at once struck him a blow with his fist, which the latter immediately returned knocking him down, and then jumped on him and asked him if he had enough, to which he replied that he had, when the deceased arose and ran off up the street, on which it had occurred in Delaware City, with a threat uttered by the prisoner as he started that he would cut his heart out, and who was soon after pursued and overtaken by him, near a store in front of which several boxes and barrels were standing, around which he dodged as the prisoner came up, but was at once seized by the hair and stabbed by him in the left breast with a pocket knife, the sharp pointed blade with which it was done being about three inches in length. The deceased again soon got away from him and started up the street, but had not proceeded far before he exclaimed that he was stabbed and cried murder, when the prisoner again said he would cut *Page 92 
the heart out of him; but he pursued him no further. The testimony of the physician who was called that night to see him was that the wound in the breast indicated a puncture of the lungs, and he at once deemed it a mortal wound, and that there were three or four other wounds on his body, one or two of which were not serious in their character, but the cuts in his clothes as well as the wounds themselves were evidently made with a very sharp instrument. The deceased died the following day.
From the evidence on the part of the prisoner it further appeared that he had recently returned to the place after a three years' cruise in a naval ship of the United States, and by the invitation of the deceased that he had gone with him that night to a saloon on the same street where they met with the brother-in-law of the prisoner, John Pustill, and where they remained together playing bagatelle and drinking three or four times at the bar, until about 11 o'clock, and until they were about to leave it, when the prisoner wanted Dulin, the deceased, to go home and stay all night with him, but which Pustill opposed and wanted him to go home and stay all night with him, until Dulin finally said to the latter to go away, he did not want to have anything to do with him, for he had had an old grudge against him for eight months. They were then out on the street, and Pustill invited and challenged Dulin to go down on the wharf and have a fight with him, but Dulin would not go and then the prisoner came up to them, and said to Dulin if it was an old grudge of eight months' standing he would take it up, and struck Dulin with his fist which blow Dulin returned with his fist and knocked him down. As to what followed immediately and soon afterwards between the prisoner and the deceased the testimony did not vary substantially from the evidence produced on the part of the State. On the part of the prisoner, however, it was further proved by several witnesses that he was very drunk at the time, that they had never known or considered him to be, either a quarrelsome or a violent man, or to carry about his person any *Page 93 
weapon or instrument more deadly or dangerous than an ordinary sized pocket knife; while in reply, on behalf of the prosecution, it was proved by an equal number of witnesses that though he had been drinking some that night, he was not drunk, but walked straight and talked rationally and sensibly both immediately before and immediately after the occurrence; and that he was both a quarrelsome and a violent man when but slightly stimulated or excited with intoxicating liquor.
on the facts and the questions of law presented in the case, who afterwards returned a verdict of "guilty of murder of the first degree;" and thereupon Mr. Rodney within the time prescribed by the rule for that purpose, submitted a motion to the Court to set aside the verdict and grant the prisoner a new trial, and filed the following reasons therefor:
1. That the Court should have instructed the jury, that if they believed the prisoner to have been intoxicated at the time the offense was committed, that such fact would reduce the grade of the offense from murder of the first degree to murder of the second degree.
2. That the Court instructed the jury if they were satisfied that a deliberate intention to kill existed in the mind of the prisoner at the time, it would warrant a verdict of murder in the first degree, without charging them that such deliberate intention to kill must be ascertained from evidence in the cause, and not as inference from the act of killing.
3. That the Court should have instructed the jury, if they found the fact of the intoxication of the prisoner at the time when the offense was committed, to be such as to produce a state of mind unfavorable to deliberation or premeditation, then in such case it would reduce the grade of the offense from murder of the first degree to murder of the second degree.
George B. Rodney. The great question in the case is that which relates to drunkenness. If the prisoner was so much intoxicated at the time he committed the offense, as to be incapable of forming a deliberate purpose to kill the deceased, then it was murder of the second degree *Page 96 
only, and could not have been more than that. But the Court did not so instruct the jury, though there are decisions to this effect in other States of the Union. 1 Bish. on Crim. Law, Sections 298, 301. For if the prisoner was so drunk as to be incapable of forming the specific intent or the deliberate design to kill, it was only murder in the second degree under our statute which has changed the common law on this subject. Whart. 369. Turtle v. The State, 9 Humph. 663. What we object to in this case is that the Court did not say to the jury that if they were convinced from the evidence in the case that the prisoner by reason of drunkenness was in such a state of mind as to be incapable of forming such a deliberate and specific purpose to kill the deceased, then it was murder in the second degree merely, and not murder of the first degree under the statute, although this was the main ground of our defense, and the Court was expressly asked by us to instruct the jury to that effect.
The Court, without hearing the State in reply, overruled the motion for a new trial, Gilpin, C. J., remarking that the question as to the degree of the prisoner's intoxication at the time, as well as the condition of his mind and his mental capacity from that cause to form a specific intent or a deliberate design to kill or stab the deceased with the knife, was distinctly left to the jury to be decided by them on all the evidence before them on that subject, with the instruction that they must be satisfied from that evidence that he had that capacity and had formed that intention in order to convict him of murder of the first degree; and on such a question of fact, and with the conflicting and contradictory testimony before them on that point, the Court could go no further than that in this or any other case like it. The Court also substantially instructed the jury that such specific or deliberate intent must be ascertained by them from all the evidence bearing on that question in the case, but not that it could be inferred by them from the act itself. *Page 97